1  Brian T. Hafter (State Bar No. 173151)
   Stefani Salt (State Bar No. 280403)
2  LeClairRyan LLP
   44 Montgomery Street, Eighteenth Floor
3  San Francisco, California 94104
   Telephone: (415) 391-7111
4  Telefax: (415) 391-8766

5  Attorneys for Defendant
   MD247.COM, INC., a Florida corporation
6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

| 11 | SUZAN MENDOZA, individually and on behalf of all other similarly situated, | Case No.: CV 13 1553 PJH |
|----|---|---|
| 12 | | **DEFENDANT MD247.COM, INC.'S** |
| 13 | Plaintiff(s), | **MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN** |
| 14 | v. | **SUPPORT OF ITS MOTION TO STAY THE ACTION** |
| 15 | UNITEDHEALTH GROUP INCORPORATED, a Minnesota corporation, | [Filed Concurrently with Declaration of |
| 16 | OPTUM, INC., a Delaware corporation, HEALTHHALLIES, INC., a Delaware | Thomas Meehan; and Proposed Order] |
| 17 | corporation, and MD247.COM, INC., a Florida corporation | Complaint Filed: April 5, 2013<br>Date: January 8, 2014 |
| 18 | Defendant(s). | Time: 9:00 a.m.<br>Courtroom: 3 |
| 19 | | Judge: Hon. Phyllis J. Hamilton |

20  **NOTICE OF MOTION TO STAY AND MEMORANDUM IN SUPPORT THEREOF**

21  PLEASE TAKE NOTICE that, on January 8, 2014 at 9:00 a.m., or as soon thereafter as

22  counsel may be heard before the Honorable Phyllis J. Hamilton, in Courtroom 3 of the above-

23  entitled Court, located at 1301 Clay Street, Oakland, California 94612, Defendant MD247.Com,

24  Inc. ("MD247") will and hereby does move for an order staying this action.

25  The Motion seeks a stay of this action pursuant to the doctrine of primary jurisdiction

26  because the Federal Communications Commission is currently, pursuant to its Congressionally-

27  vested authority to adopt regulations implementing the Telephone Consumer Protection Act of

28  1991, 47 U.S.C. § 227 *et seq.*, considering petitions for declaratory relief that will decide a

1 | central issue to this action.

2 |     This Motion is based upon this Notice of Motion, the attached Memorandum of Points
3 | and Authorities, the accompanying Declaration of Thomas Meehan and the facts stated therein,
4 | the Court's file on this matter, and upon such further argument and evidence presented at or
5 | before the hearing of this matter.

7 | Dated: November 27, 2013            LeClairRyan LLP

By: _____
Brian T. Hafter
Stefani M. Salt
Attorneys for Defendant
MD247.COM, INC., a Florida corporation

# TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................6

II. STATEMENT OF ISSUE................................................................................................7

III. BACKGROUND ..............................................................................................................8

   A. MD247 Is a Marketing Company that Utilizes a Predictive Dialer Without the Present Capacity to Store or Produce Telephone Numbers to Be Called Using a Random or Sequential Number Generator, and to Dial Such Numbers. .................................................8

   B. Plaintiff's Cause of Action Requires Proof that MD247's Predictive Dialer is an ATDS, as Defined. ...........................................................................................................................9

   C. The TCPA Prohibits Non-Emergency Calls to Cellular Telephones Using ATDS Without the Requisite Consent. ......................................................................................................9

   D. The FCC is Currently Considering GroupMe, Inc.'s Petition for Expedited Declaratory Ruling and Clarification, among Other Similar Petitions, on the Definition of ATDS and the Meaning of Capacity ..................................................................................................10

IV. ARGUMENT..................................................................................................................11

   A. This Case Should Be Stayed Under the Primary Jurisdiction Doctrine Because the FCC is Currently Actively Considering the Definition of ATDS and the Meaning of the Term *Capacity*. ............................................................................................................................11

   B. Staying the Case Will Not Cause Plaintiff to Suffer Any Cognizable Prejudice, but MD247 Could Suffer Debilitating Prejudice..................................................................................15

V. CONCLUSION...............................................................................................................16

## TABLE OF AUTHORITIES

**CASES**

Charvat v. Echostar Satellite, LLC,
  630 F.3d 459 (6th Cir. 2010)..................................................................................14, 16

Clark v. Time Warner Cable,
  523 F.3d 1110 (9th Cir. 2008)..........................................................................................13

Davel Commc'ns., Inc. v. Qwest Corp.,
  460 F.3d 1075 (9th Cir. 2006)..................................................................................13, 16

Glauser v. Twilio, Inc.,
  No. C 11-2584 PJH, 2012 U.S. Dist. LEXIS 9648 (N.D. Cal. Jan. 27, 2012) (Hamilton, J.)
  (ECF No. 73)..........................................................................................7, 8, 12, 13, 14, 16

GTE.Net LLC v. Cox Commc'ns, Inc.,
  185 F. Supp. 2d 1141 (S.D. Cal. 2002)............................................................................13

Hunt v. 21st Mortgage Corp.,
  Civ. Action No. 2:12-CV-2697-WMA, 2013 U.S. Dist. LEXIS 132574 (N.D. Ala. Sept. 17,
  2013) .................................................................................................................................14

Mashiri v. Ocwen Loan Servicing, LLC,
  Civil No. 3:12-cv-02838-L-MDD, 2013 U.S. Dist. LEXIS 154534 (S.D. Cal. Oct. 28, 2013).12

Reiter v. Cooper,
  507 U.S. 258 (1993)..........................................................................................................13

Sterk v. Path, Inc.,
  No. 13 C 2330, 2013 U.S. Dist. LEXIS 140017 (N.D. Ill. Sept. 26, 2013) .......................12

Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc.,
  307 F.3d 775 (9th Cir. 2002)............................................................................................13

United States v. Gen. Dynamics Corp.,
  828 F.2d 1356 (9th Cir. 1987)..........................................................................................13

**STATUTES**

Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.* .................2, 6, 9, 10, 14, 16

**REGULATIONS**

47 C.F.R. §64.1200(f)(2) .............................................................................................................6

**ADMINISTRATIVE AGENCY MATERIALS**

Communication Innovators Petition For Declaratory Ruling,
 FCC CG Docket 02-278, June 7, 2012, p. 1 .................................................................................. 11

FCC Public Notice Seeking Comments on Petition for Expedited Declaratory Ruling and/or
 Expedited Rulemaking from the Professional Association for Customer Engagement
 ("PACE"), CG Docket No. 02-278,
 available at http://transition.fcc.gov/Daily_Releases/Daily_Business/2013/db1119/DA-13-
 2220A1.pdf ................................................................................................................................. 7, 12

GroupMe, Inc.'s Petition for Expedited Declaratory Ruling and Clarification,
 FCC CG Docket 02-278, at 9-16 (March 1, 2012) .......................................................... 7, 11, 15, 16

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of
 1991,*
 18 FCC Rcd. 14,014 (July 3, 2003) ................................................................................................ 11

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of
 1991,*
 23 FCC Rcd. 559 (Jan. 4, 2008) ..................................................................................................... 11

Petition for Reconsideration of Satcom Marketing LLC,
 FCC CG Docket No. 02-278 (July 11, 2012) ................................................................................. 11

Professional Association for Customer Engagement's Petition for Reconsideration,
 FCC CG Docket No. 02-278 (July 11, 2012) ................................................................................. 11

Revolution Messaging Petition for an Expedited Clarification and Declaratory Ruling,
 FCC CG Docket No. 02-278 (Jan. 19, 2012) ................................................................................. 11

YouMail, Inc. Petition for Expedited Declaratory Ruling,
 FCC CG Docket 02-278 (April 19, 2013) ...................................................................................... 11

**LEGISLATIVE HISTORY**

102 Cong. Rec. S18317 (daily ed. November 26, 1991) (statement of Sen. Pressler) ................... 10

**ADMINISTRATIVE PETITIONS**

FCC Encyclopedia, *FCC Updates and Releases,*
 available at http://www.fcc.gov/encyclopedia/fcc-updates-and-releases (last visited Nov. 18,
 2013) ............................................................................................................................................... 15

FCC Items on Circulation,
 available at http://transition.fcc.gov/fcc-bin/circ_items.cgi ................................................. 7, 12, 15

## I. INTRODUCTION

Plaintiff Suzan Mendoza ("Plaintiff" or "Ms. Mendoza") filed this putative class action against Defendant MD247.Com, Inc. ("MD247") and Co-Defendants, UnitedHealth Group Incorporated, Optum, Inc., and HealthAllies, Inc. (collectively, the "UH Defendants"), alleging, among other things, that MD247 violated the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.* (the "TCPA") by initiating calls to Plaintiff's cellular telephone phone without her prior express consent using an *automatic telephone dialing system* ("ATDS"). The TCPA and the implementing regulations of the Federal Communications Commission ("FCC") define ATDS as "equipment which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers." Id. at §227(a)(1), 47 C.F.R. §64.1200(f)(2).

Even assuming, *arguendo*, that MD247 made the calls at issue, MD247's dialing equipment does not have the *present* capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial those numbers. Therefore, the calls in question were not initiated by an ATDS, were not subject to the TCPA's prohibition on the initiation of calls to cell phones, and MD247 must be absolved from liability under the Complaint.

There has been a significant amount of debate regarding whether dialing equipment's *present* capacity is the determinative factor in classifying it as an ATDS, or whether the equipment's *potential* capacity with hardware and/or software alterations should be considered -- regardless of whether the *potential* capacity is utilized at the time calls in question are made. In fact, the FCC is currently considering multiple petitions for declaratory ruling that address this precise issue.[1]  This Court, too, will have to address this technical issue in order to decide the merits of Plaintiff's Complaint ("Complaint").  Given the nationwide debate this issue has

---

[1] See: FCC Items on Circulation, available at http://transition.fcc.gov/fcc-bin/circ_items.cgi (last visited Nov. 12, 2013); see also FCC Public Notice Seeking Comments on Petition for Expedited Declaratory Ruling and/or Expedited Rulemaking from the Professional Association for Customer Engagement ("PACE"), CG Docket No. 02-278, available at http://transition.fcc.gov/Daily_Releases/Daily_Business/2013/db1119/DA-13-2220A1.pdf (last visited Nov. 20, 2013) (requesting public comments on PACE's petition that the FCC provide guidance on the definition of "capacity"); see also *infra* fn 5.

triggered and the petitions the FCC is currently considering, MD247 moves this Court to stay this case pursuant to the doctrine of primary jurisdiction until such time as the FCC exercises its expertise and rules on this issue.

Indeed, in Glauser v. Twilio, Inc., No. C 11-2584 PJH, 2012 U.S. Dist. LEXIS 9648 (N.D. Cal. Jan. 27, 2012) (ECF No. 73) (Hamilton, J.), a case in which the putative plaintiff likewise alleged a defendant initiated calls in the form of text messages to a cellular phone using an ATDS without the plaintiff's prior express consent, your Honor recognized the FCC's proper role in determining what constitutes an ATDS and granted the Defendant GroupMe, Inc.'s Motion to Dismiss the Amended Complaint, to Stay the Action or Transfer Venue ("Motion to Dismiss or Stay").[2, 3] Moreover, since this Court entered the Order Granting Motions to Stay, Defendant GroupMe, Inc. ("GroupMe") petitioned the FCC for an expedited declaratory rulemaking seeking clarification on the FCC's definition of ATDS ("GroupMe Petition"). The GroupMe Petition specifically requested the FCC rule that the term "capacity" as it is used in the definition of ATDS be construed narrowly so as to apply to dialing equipment's *present* capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial those numbers. The FCC currently is circulating an order directly addressing the GroupMe Petition.[4]

MD247, therefore, respectfully moves this Court to stay this case, consistent with its Order staying the Twilio case, until such point in time that the FCC provides clarity on the definition of what equipment constitutes an ATDS.

II. **STATEMENT OF ISSUE**

Whether this case should be stayed pursuant to the doctrine of primary jurisdiction pending the FCC's determination of whether automatic telephone dialing systems ("ATDS")

---

[2] See Order Granting Mots. to Stay, Glauser v. Twilio, Inc., No. C 11-2584 PJH, 2012 U.S. Dist. LEXIS 9648 (N.D. Cal. Jan. 27, 2012) (ECF No. 73) (granting Defendant GroupMe, Inc.'s motion as well as Defendant Twilio, Inc.'s Motion to Dismiss, which similarly moved, in the alternative, to stay the lawsuit).

[3] Although there appears to be a dispute between the parties in Twilio as to what issues remain pending before the FCC, including a dispute as to what issues the FCC's 2012 Report and Order resolved (if any), MD247 respectfully submits to the Court that the 2012 Report and Order did not resolve the issue of what constitutes an ATDS and the meaning of the term "capacity."

[4] See supra at fn 1.

include equipment that is operated without the *present* capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial those numbers, at the time the alleged calls in question were made – although the equipment had the *potential* capacity to do so.

## III. BACKGROUND

### A. MD247 Is a Marketing Company that Utilizes a Predictive Dialer Without the Present Capacity to Store or Produce Telephone Numbers to Be Called Using a Random or Sequential Number Generator, and to Dial Such Numbers.

MD247 is a company offering telemedicine services to its customers for a monthly membership fee. See Declaration in Support of MD247.Com, Inc.'s Motion to Stay by Thomas Meehan ("Meehan Decl.") at ¶ 2. Its customers have 24 hour, 7 days a week access to health care providers through their membership with MD247. Meehan Decl. at ¶ 3.

MD247 utilizes a predictive dialer to initiate telemarketing calls to potential new customers in addition to other marketing efforts. Id. at ¶ 4. A predictive dialer is sophisticated dialing equipment which, after a list of telephone numbers is loaded into it, dials such list at a rate calculated by a complex mathematical algorithm to predict both when consumers will answer the calls and when call center agents will be available to speak with the call recipients. Id. at ¶ 5. The algorithm determines this calling rate by considering many data points such as the average length of calls, time of day, day of week, historical data, etc. Id. at ¶ 6. Once a call recipient answers the outbound telephone call, the dialer instantaneously connects the call to live call center agents. Id. at ¶ 7. Though its technology may be complex, its purpose is simple: to minimize calls to consumers when no live representative is available to speak to them when they answer the telephone. Id. at ¶ 8.

At the time the alleged calls were initiated to the Plaintiff, MD247 did not utilize any capacity that the predictive dialer may have had to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers ("Auto-dial"). Id. at ¶ 9. In short, the predictive dialer did not have the then-*present* capacity to Auto-dial.

### B. Plaintiff's Cause of Action Requires Proof that MD247's Predictive Dialer is an ATDS, as Defined.

In her Complaint, Plaintiff alleges MD247 violated 47 U.S.C. § 227(b)(1)(A)(iii) by initiating telephone calls to Plaintiff's cellular telephone (as well as to others) "using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers" without prior express consent. Compl. ¶¶ 31-34.

In order to prevail, Plaintiff must prove that, at the time the alleged calls were made, MD247's predictive dialer was an ATDS despite the fact that it did not have the *present* capacity to Auto-dial.

### C. The TCPA Prohibits Non-Emergency Calls to Cellular Telephones Using ATDS Without the Requisite Consent.

In enacting the TPCA in 1991, Congress sought to prohibit telemarketing methods it considered to be an invasion of consumer privacy and a threat to public safety. See Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 § 2(5) (1991) (codified at 47 U.S.C. § 227, *et seq.*). Such methods included calls made using randomly or sequentially generated telephone numbers that could reach unlisted numbers, hospitals, or other emergency service providers. See, e.g., 102 Cong. Rec. S18317 (daily ed. November 26, 1991) (statement of Sen. Pressler) (explaining how sequential dialing has resulted in clogging up hospital lines and thereby creating a real hazard). Accordingly, Congress prohibited the use of equipment that would enable such intrusive calls without the prior consent of the consumer.

With regard to calls to cellular telephones, the TCPA provides that: "[i]t shall be unlawful for persons within the United States –

> (A) to make any call (other than a call for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or artificial or prerecorded voice –
>
> * * *
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an "automatic telephone dialing system" (or ATDS) as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). In short, it is unlawful to place a non-emergency call to a cellular telephone using an "automatic telephone dialing system" without the "prior express consent" of the called-party. Id.

### D. The FCC is Currently Considering GroupMe, Inc.'s Petition for Expedited Declaratory Ruling and Clarification, among Other Similar Petitions, on the Definition of ATDS and the Meaning of *Capacity*.

The FCC is currently considering petitions to address the outdated definition of ATDS; specifically, several petitioners have asked the FCC to narrowly construe the term *capacity* at the time the call in question is made.[5] Given the rapid pace with which technology has developed and continues to develop since Congress and the FCC first defined ATDS in 1991, the industry as a whole needs guidance from the FCC regarding whether equipment without the *present* capacity to Auto-dial at the time a call is initiated is nevertheless an ATDS merely because it had the *potential* capacity to Auto-dial.

Most notably, following this Court's Order Granting GroupMe's Motion to Dismiss or Stay the Twilio case under the doctrine of primary jurisdiction with respect to the definition of ATDS (among other issues), Twilio, 2012 U.S. Dist. LEXIS 9648, at *9, GroupMe filed a Petition for Expedited Declaratory Ruling and Clarification with the FCC requesting clarification

---

[5] See *supra* at fn 1 (noting that several pending petitions have orders being circulated among the commissioners and that the FCC has recently solicited further commentary on the issue of capacity). Moreover, since the TCPA's enactment, there has been much debate regarding whether predictive dialers fall within the definition of ATDS. The FCC has previously concluded that predictive dialers are within the definition of ATDS. See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14,014, 14,090-93 (July 3, 2003) and In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd. 559, 566-67 (Jan. 4, 2008). However, on June 7, 2012, Communication Innovators filed a Petition for Declaratory Ruling before the FCC, requesting that the Commission clarify, *inter alia*, "that predictive dialers that . . . do not have the *current ability* to generate and dial random or sequential numbers, are not . . . [ATDS] under the TCPA." Communication Innovators Petition For Declaratory Ruling, FCC CG Docket 02-278, June 7, 2012, p. 1 ("CI Petition"). Additionally, four other petitions have been filed with the FCC in the last two years addressing the confusion surrounding what constitutes an ATDS. See Revolution Messaging Petition for an Expedited Clarification and Declaratory Ruling, FCC CG Docket No. 02-278 (Jan. 19, 2012); Professional Association for Customer Engagement's Petition for Reconsideration, FCC CG Docket No. 02-278 (July 11, 2012); Petition for Reconsideration of Satcom Marketing LLC, FCC CG Docket No. 02-278 (July 11, 2012); and YouMail, Inc. Petition for Expedited Declaratory Ruling, FCC CG Docket 02-278 (April 19, 2013). Of course most crucial to this Court is the petition filed by GroupMe, Inc. on March 1, 2012 and discussed *supra* at p. 6, 9-11. All six petitions are currently actively pending on the FCC's docket.

regarding which machines constitute ATDS under the TCPA, and what it means for a machine to have the *capacity* to Auto-dial. See GroupMe, Inc.'s Petition for Expedited Declaratory Ruling and Clarification, FCC CG Docket 02-278, at 9-16 (March 1, 2012), attached hereto as **Exhibit A**.

With at least two cases pending in this Court that will turn upon whether the equipment utilized to initiate the subject calls was an ATDS – and numerous others pending in other federal district courts[6] – the matter is ripe for decision and interpretation by the FCC. Indeed, the FCC is presently circulating an order addressing the issue.[7] Moreover, as recently as November 20, 2013, the FCC's Consumer and Governmental Affairs Bureau publicly noticed a request for comments on another petition seeking clarification on the "capacity" issue.[8]

## IV. ARGUMENT

### A. This Case Should Be Stayed Under the Primary Jurisdiction Doctrine Because the FCC is Currently Actively Considering the Definition of ATDS and the Meaning of the Term *Capacity*.

Because it is unclear whether a predictive dialer is an ATDS (i.e., has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers), and because petitions seeking resolution of this interpretive matter are currently before the FCC, this case should be stayed pending such resolution.

As indicated above, this Court granted Defendants' Motions to Dismiss the Complaint and in the Alternative, to Stay or Transfer the Action pending FCC resolution of the ATDS interpretive issue, among others, in Twilio. See Twilio, 2012 U.S. Dist. LEXIS 9648, at *8. In Twilio, this Court explained as follows:

---

[6] See, e.g., Mashiri v. Ocwen Loan Servicing, LLC, Civil No. 3:12-cv-02838-L-MDD, 2013 U.S. Dist. LEXIS 154534, at *1, *13 (S.D. Cal. Oct. 28, 2013) (denying defendant's motion to dismiss because plaintiff sufficiently alleged use of ATDS in his Complaint); Sterk v. Path, Inc., No. 13 C 2330, 2013 U.S. Dist. LEXIS 140017, at *7 (N.D. Ill. Sept. 26, 2013) (denying motion to stay at motion to dismiss stage, but acknowledging that whether the equipment qualified as ATDS was a "key issue" in the case).

[7] See FCC Items on Circulation, available at http://transition.fcc.gov/fcc-bin/circ_items.cgi (last visited Nov. 12, 2013).

[8] See FCC Public Notice Seeking Comments on Petition for Expedited Declaratory Ruling and/or Expedited Rulemaking from the Professional Association for Customer Engagement ("PACE"), CG Docket No. 02-278, available at http://transition.fcc.gov/Daily_Releases/Daily_Business/2013/db1119/DA-13-2220A1.pdf (last visited

> As these issues directly overlap with the legal issues before the court by way of plaintiff's complaint and defendants' motions to dismiss, the court concludes that the FCC is in the process of utilizing its recognized expertise to consider issues pending before the court. As such, the prerequisites for application of the primary jurisdiction doctrine are satisfied, and allowing the FCC to resolve the foregoing issues prior to adjudicating the issues in the present action, in order to obtain the benefit of the FCC's guidance, is appropriate.

Id. at *7.

"The primary jurisdiction doctrine 'is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decision-making responsibility should be performed by the relevant agency rather than the courts.'" Davel Commc'ns., Inc. v. Qwest Corp., 460 F.3d 1075, 1086 (9th Cir. 2006) (quoting Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc., 307 F.3d 775, 780 (9th Cir. 2002)). The doctrine does not permanently deprive the court of jurisdiction, but provides the appropriate administrative agency with an opportunity to act on the issue within its special competence if it chooses to do so. See Reiter v. Cooper, 507 U.S. 258, 268 (1993); see also Davel, 460 F.3d at 1080. "The doctrine is applicable whenever the enforcement of a claim subject to a specific regulatory scheme requires resolution of issues that are within the special competence of an administrative body." Twilio, 2012 U.S. Dist. LEXIS 9648, at *3 (citing Davel, 460 F.3d at 1086). And, lastly, "[t]he doctrine is furthermore appropriate where conduct is alleged which is 'at least arguably protected or prohibited by a regulatory statute,' and agency resolution of an issue is 'likely to be a material aid to any judicial resolution.'" Id. (citing GTE.Net LLC v. Cox Commc'ns, Inc., 185 F. Supp. 2d 1141, 1144 (S.D. Cal. 2002) (granting motion to stay on primary jurisdiction grounds)).

The Ninth Circuit "traditionally" considers four factors when determining whether the primary jurisdiction doctrine applies: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." Davel, 460 F.3d at 1086 – 87

(quoting United States v. Gen. Dynamics Corp., 828 F.2d 1356, 1362 (9th Cir. 1987)); see also Clark v. Time Warner Cable, 523 F.3d 1110, 1115-16 (9th Cir. 2008) (affirming referral to FCC on issues regarding emerging VoIP technology) ("We have previously approved of the use of the primary jurisdiction doctrine where it is unclear whether a federal statute applies to a new technology"). Upon consideration of each factor, the primary jurisdiction doctrine clearly applies to this case where it is unclear whether the TCPA's definition of ATDS is meant to be broadly or, alternatively, narrowly construed in light of technological advancements and dialing equipment's resultant *potential capacity* to Auto-dial via modifications or programming.

*First*, the doctrine of primary jurisdiction applies because there is a need for administrative expertise to resolve whether the predictive dialer used by MD247 to initiate the alleged calls to Plaintiff qualifies as an ATDS under the TCPA and the FCC's implementing regulations. Specifically, it is unclear whether a predictive dialer has the *capacity* to Auto-dial. Resolution of whether the definition of ATDS contemplates *present* capacity or the broader, more sweeping *potential* capacity is crucial to causes of action brought under 47 U.S.C. § 227(b)(1)(A)(iii). Specifically, resolution is required in order for Ms. Mendoza to prove that MD247 made non-emergency calls to her cellular phone without her prior express consent and that MD247's predictive dialer is an ATDS under the TCPA.

*Second*, as this Court recognized in Twilio, "who qualifies as an auto-dialer subject to the TCPA" is "generally speaking, [a] matter[] . . . within the jurisdiction of the FCC." Twilio, 2012 U.S. Dist. LEXIS 9648, at *5; see, e.g., Charvat v. Echostar Satellite, LLC, 630 F.3d 459, 466 (6th Cir. 2010) (determining that the answers to certain questions before the court "implicate[d] the FCC's statutory authority to interpret the Act, to say nothing of its own regulations").

Courts have not interpreted the term "capacity" uniformly. See, e.g., Hunt v. 21st Mortgage Corp., Civ. Action No. 2:12-CV-2697-WMA, 2013 U.S. Dist. LEXIS 132574, at *10-11 (N.D. Ala. Sept. 17, 2013) (acknowledging its interpretation of "capacity" differs from the Ninth Circuit and other district courts). This inconsistency was addressed in GroupMe's Petition currently pending before the FCC:

> Without the Commission's guidance, some courts have read "capacity" to encompass: (1) equipment capable of autodialing random or sequential

numbers whether or not used for that purpose; and (2) equipment that could be altered to make it capable of autodialing random or sequential numbers. Both of these interpretations are problematic, but the second would expand "capacity" to sweep in tens of millions of smartphones for which applications could be downloaded to program them to autodial random or sequential numbers, or widely available equipment . . . that is incapable of autodialing random or sequential numbers but could be programmed to do so if software for that purposed was written and installed.

GroupMe Petition (Ex. A), at 9-10.

As a result, GroupMe and others have petitioned the FCC to address the definition of ATDS in light of technology's advancements to the point that many types of equipment have the *potential* capacity, if altered, programmed, or augmented, to Auto-dial. See GroupMe Petition (Ex. A), at 9-16; see also supra fn 3.

Furthermore, an order is on circulation amongst the commissioners of the FCC to address the GroupMe Petition, and other similar petitions, so that this issue may be resolved once and for all for this Court and others. See FCC Items on Circulation, available at http://transition.fcc.gov/fcc-bin/circ_items.cgi (last visited Nov. 20, 2013). "The list of FCC Items on Circulation provides a compilation of the Commission level items that have been circulated and are pending action by the full Commission. This list is updated on a weekly basis." See FCC Encyclopedia, *FCC Updates and Releases*, available at http://www.fcc.gov/encyclopedia/fcc-updates-and-releases (last visited Nov. 18, 2013). And, crucially, on November 20, 2013, the FCC requested public comments on the issue of "capacity" raised by the Professional Association for Customer Engagement in its Petition for Expedited Declaratory Ruling.[9] Congress placed this issue within the FCC's jurisdiction pursuant to its regulatory authority and, importantly, the FCC is presently actively addressing the issue.

***Third***, the TCPA subjects the telecommunications and telemarketing industries to a comprehensive regulatory scheme. The TCPA was written specifically to regulate these industries and vests in the FCC the obligation to implement regulations pertaining to its interpretation. 47 U.S.C. § 227(b)(2).

---

[9] See *supra* at fn 8.

*Fourth*, that the FCC is currently considering this very technical issue suggests strongly that resolution of the issue requires expertise and uniformity in administration, and that the FCC's expertise would be a material aid to judicial resolution. As this Court expressed in Twilio: "[A]llowing the FCC to resolve the foregoing issues prior to adjudicating the issues in the present action, in order to obtain the benefit of the FCC's guidance, is appropriate." Twilio, 2012 U.S. Dist. LEXIS 9648, at *7 (citing Davel, 460 F.3d at 1087). And, as the GroupMe Petition explains, district courts have not applied the term "capacity" as it is utilized in the definition of ATDS uniformly. See GroupMe Petition (Ex. A), at 9-10.

By *not* deferring to the FCC, there is significant risk that courts across the country will reach differing conclusions thereby creating a lack of uniformity for both consumers and the call center industry. See, Charvat, 630 F.3d at 466 ("[T]he volume of these [TCPA] lawsuits heightens the risk that individuals and companies will be subject to decisions pointing in opposite directions.").

### B. Staying the Case Will Not Cause Plaintiff to Suffer Any Cognizable Prejudice, but MD247 Could Suffer Debilitating Prejudice.

Plaintiff will suffer little or no prejudice from a stay in this case. Plaintiff alleges she received "at least two calls . . . in one day in or around March 26, 2013 asking for Plaintiff's husband." Compl. ¶ 19. Moreover, this case is still in its early stages – discovery has not been concluded and dispositive motions have not been filed. As this Court explained in its Order Granting Motions to Stay in the Twilio case, "[I]n view of the early stage of the present action, the court finds that the benefit to be provided by FCC guidance on potentially dispositive issues in this litigation outweighs the benefit to plaintiff in allowing the action to proceed." Twilio, 2012 U.S. Dist. LEXIS 9648, at *8.

If a stay is not granted in this case, MD247 will likely suffer debilitating prejudice. In addition to incurring significant attorneys' fees during the pendency of this case, should the class Plaintiff seeks to assemble be certified and ultimately prevail, the statutory damages to which Plaintiff may be eligible will be catastrophic. Much of this damage could potentially be for naught in the event the FCC rules subsequently that a predictive dialer like MD247's is not, in

fact, an ATDS. This unjust and inequitable result could be avoided with little or no prejudice to Plaintiff by staying this lawsuit until the FCC rules upon GroupMe's Petition.

## V.  CONCLUSION

In light of the foregoing, Defendant MD247.Com, Inc. respectfully requests this Court act consistently with its ruling in Glauser v. Twilio, Inc. and stay this case pending FCC resolution of the definition of the term "capacity."

Dated: November 27, 2013

LeClairRyan LLP

By: _____
Brian T. Hafter
Stefani M. Salt
Attorneys for Defendant
MD247.COM, INC., a Florida corporation

# CERTIFICATE OF FILING

I hereby certify that on **November 27, 2013**, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send a notification of electronic filing to the following CM/ECF Participants:

| | |
|---|---|
| Sean R. Reis, Esq.<br>THE REIS LAW FIRM, A.P.C.<br>30021 Tomas Street, Suite 300<br>Rancho Santa Margarita, CA 92688<br>(949) 713-9440<br>sreis@reisfirm.com | Mitchell E. Zamoff, Esq.<br>Robert B. Hawk, Esq.<br>Stacy R. Hovan, Esq.<br>HOGAN LOVELLS US LLP<br>525 University Avenue, 4th Floor<br>Palo Alto, CA 94301<br>mitch.zamoff@hoganlovells.com |
| Jay Edelson, Esq.<br>Rafey S. Balabanian, Esq.<br>Christopher Dores. Esq.<br>Benjamin H. Richman, Esq.<br>EDELSON LLC<br>350 North LaSalle St., Suite 1300<br>Chicago, IL 60654<br>jedelson@edelson.com<br>rabalabanian@edelson.com<br>cdore@edelson.com<br>brichman@edelson.com | robert.hawk@hoganlovells.com<br>stacy.hovan@hoganlovells.com<br><br>Adam K. Levin, Esq.<br>Carolyn Anne DeLone, Esq.<br>HOGAL LOVELLS US LLP<br>555 13th St. NW<br>Washington, D.C. 20004<br>adam.levin@hoganlovells.com |
| Stefan Coleman, Esq.<br>LAW OFFICES OF STEFAN COLEMAN, LLC<br>201 S. Biscayne Boulevard, 28th Floor<br>Miami, Florida 33131<br>Telephone: (877) 333-9427<br>law@stefancoleman.com | *Attorneys for Co-Defendants UnitedHealth Group, Inc., Optum, Inc. and HealthAllies, Inc.* |

*Attorneys for Plaintiff and the Putative Class*

By: _____
Brian T. Hafter
Stefani M. Salt
Attorneys for Plaintiff
MOTIV POWER SYSTEMS, INC.
LeClairRyan LLP
44 Montgomery St., 18th Floor
San Francisco, CA 94104
(415) 391-7111, Fax (415) 391-8766
Brian.hafter@leclairryan.com
Stefani.salt@leclairryan.com