Sean P. Reis (State Bar No. 184044)
THE REIS LAW FIRM, A.P.C.
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: (949) 713-9440
Fax: (949) 459-2123

Rafey S. Balabanian (*Pro Hac Vice*)
(rbalabanian@edelson.com)
Ari J. Scharg (*Pro Hac Vice*)
(ascharg@edelson.com)
Chris Dore (*Pro Hac Vice*)
(cdore@edelson.com)
EDELSON LLC
350 N. LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

*Attorneys for Plaintiff Mendoza and the putative class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| SUZAN MENDOZA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITEDHEALTH GROUP INCORPORATED, a Minnesota corporation, OPTUM, INC., a Delaware corporation, HEALTHALLIES, INC., a Delaware corporation, and MD247.COM, INC., a Florida corporation,<br><br>Defendants. | Case No. 13-cv-01553-JCS<br><br>**PLAINTIFF MENDOZA'S RESPONSE IN OPPOSITION TO DEFENDANT MD247'S MOTION TO STAY**<br><br>[Honorable Phyllis J. Hamilton]<br><br>Hearing Date: January 8, 2014<br>Time: 2:00 p.m.<br>Courtroom 3, 3rd Floor<br><br>Complaint Filed: Apr. 5, 2013 |

# INTRODUCTION

This putative class action arises out of a marketing campaign that was jointly created and implemented by Defendant MD247.com, Inc. ("MD247") and certain named-UnitedHealth Group entities ("UHG")[1] (collectively, "Defendants") to sell memberships to their discount and "telemedicine" programs. Plaintiff Suzan Mendoza alleges that to reach the broadest audience possible, Defendants made unsolicited telemarketing calls promoting their membership services to thousands of individuals without consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Mendoza also alleges that MD247—a telemarketing company—made the calls at issue by using predictive dialing equipment that qualifies as an "automatic telephone dialing system" ("ATDS") under the TCPA because it "has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator [and] to dial such numbers." *See* 47 U.S.C. § 227(a)(1).

MD247 has moved to stay the case pursuant to the doctrine of primary jurisdiction "until such point in time that the FCC provides clarity on the definition of what equipment constitutes an ATDS." (Def. Mot. & Mem. of P. & A. Supp. Mot. Stay Action ["Mot."] at 7.) As explained more fully below, MD247's motion should be denied for three reasons.

First, there is no issue of first impression here for initial resolution by the FCC. MD247 admits that it used predictive dialing equipment which stores and automatically dials lists of telephone numbers without human intervention, *see* Dkt. 51 ["Meehan Decl."] ¶¶ 4-7, and the FCC has already specifically ruled multiple times that such equipment constitutes an ATDS under the TCPA.

Second, while MD247 asserts that the FCC could revisit its previous rulings and narrow the interpretation of the term "capacity," the meaning of that word is not currently—and may never be—before the Court in this case. Indeed, although MD247 argues its dialing equipment

---

[1] The named UHG defendants are UnitedHealth Group Incorporated, Optum, Inc., and HealthAllies, Inc.

lacks the "present capacity" to auto-dial, the Meehan Declaration actually says something different—that MD247 "did not *utilize* any capacity that its predictive dialer *may have had*" to auto-dial. (Meehan Decl. ¶ 9) (emphasis added.)

Third, even if the meaning of the term "capacity" was before this Court, it is not a technical question requiring any particular FCC expertise; instead, it's a straightforward question of statutory interpretation well within this Court's competence to decide.

Ultimately, as the Court knows, there is no guarantee that the FCC will rule on anything pertinent to this case, much less swiftly. Thus, staying the case in the hopes that the FCC will decide something soon would serve no purpose. It is for these reasons that the Court should decline to invoke the doctrine of primary jurisdiction and deny MD247's requested stay of the case.

## ARGUMENT

The TCPA was enacted to address the "intrusive invasion of privacy" that results from "[u]nrestricted telemarketing." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012) (quoting congressional findings). Among other things, the TCPA prohibits using an ATDS to make unsolicited phone calls to cellular telephones, 47 U.S.C. § 227(b)(1)(A)(iii), the conduct alleged here. Invoking the doctrine of primary jurisdiction, MD247 argues that this action should be stayed until some unknown future time when the FCC "provides clarity" on what constitutes an ATDS. (Mot. at 7.)

The primary jurisdiction doctrine is "a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decision making responsibility should be performed by the relevant agency rather than the courts." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006) (quoting *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002)). The doctrine applies only "in a limited set of circumstances." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). It is not designed to "secure expert advice from agencies every time a court is presented with an issue

conceivably within the agency's ambit." *Id*. Rather, it is to be applied "*only* if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Id*. (emphasis added). While "no fixed formula exists for applying the doctrine of primary jurisdiction," *Davel*, 460 F.3d at 1086, courts in this circuit generally look to whether there is a need for agency expertise and uniformity on an issue, or whether the issue is within the conventional experience of judges and there is no substantial danger of inconsistent judicial and agency rulings. *See Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172-73 (9th Cir. 2002). Here, none of the "limited set of circumstances" warranting application of the primary jurisdiction doctrine are present.

## I. THERE IS NO QUESTION OF FIRST IMPRESSION HERE BECAUSE THE FCC HAS RULED MULTIPLE TIMES THAT A PREDICTIVE DIALER IS AN ATDS.

While application of the primary jurisdiction doctrine is appropriate where a claim requires resolution of a complicated issue of first impression best left for agency determination, there is no such issue here. In order to prevail on her TCPA claim, Mendoza must establish that MD247 made a call to her cellular telephone using an ATDS. *See* 47 U.S.C. § 227(b)(1)(A)(iii). The only element of this claim that MD247 argues involves an issue appropriate for FCC determination is whether MD247 used an ATDS within the meaning of the TCPA. But contrary to MD247's suggestion, that question is not a complicated issue of first impression.

The TCPA defines an ATDS as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." 47 U.S.C. § 227(a)(1). The equipment used by MD247 is what is known as a "predictive dialer," which MD247 describes as "sophisticated dialing equipment which, after a list of telephone numbers is loaded into it, dials such list at a rate calculated by a complex mathematical algorithm. . . ." (Mot. at 8) (citing Meehan Decl. ¶¶ 4-5). But while MD247 asserts that "it is unclear whether a predictive dialer is an ATDS," (Mot. at 11), nothing could be further from the truth.

The FCC has ruled twice—and numerous federal courts, including the Ninth Circuit, have held in reliance on those rulings—that a predictive dialer is an ATDS. *See, e.g., In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14092-93 (2003) ("[T]he Commission finds that a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment'"); *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 566 (2008) ("[W]e affirm that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) ("[Defendant's] predictive dialers fall squarely within the FCC's definition of 'automatic telephone dialing system.'"); *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 727 (N.D. Ill. 2011) (relying on the 2003 and 2008 decisions of the FCC and holding "predictive dialers are governed by the TCPA because . . . they have the capacity to dial numbers 'without human intervention.'"); *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 729-30 (S.D. Tex. 2012) ("[The FCC] determined that, for purposes of the TCPA, an 'automatic telephone dialing system' included predictive dialers.").

Indeed, the FCC could not be have been more clear, stating first in 2003:

> We believe the purpose of the requirement that equipment have the "capacity to store or produce telephone numbers to be called" is to ensure that the prohibition on autodialed calls not be circumvented. Therefore, **the Commission finds that a predictive dialer falls within the meaning and statutory definition of "automatic telephone dialing equipment"** and the intent of Congress.

18 FCC Rcd. at 14092-93 (emphasis added). And again, five years later, the FCC expressly reaffirmed that a predictive dialer is an ATDS:

> In this Declaratory Ruling, **we affirm that a predictive dialer constitutes an automatic telephone dialing system** and is subject to the TCPA's restrictions on the use of autodialers.

23 FCC Rcd. at 566 (emphasis added).[2]

---

[2] A third FCC order also confirms that a predictive dialer is an ATDS. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 19 FCC Rcd. 19215, 19215 n.1 (2004) ("An automatic telephone dialing system is defined as equipment which has the capacity

Because MD247 asserts that it used a predictive dialer, and the FCC has clearly ruled multiple times that a predictive dialer is an ATDS, the question of whether MD247 used an ATDS does not present this Court with a complicated issue of first impression best left to agency determination. *See Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 101-02 (N.D. Ill. 2013) ("[Whether a predictive dialer is an ATDS] is clearly not a matter of first impression. Indeed, this is why numerous courts have rejected similar motions to stay based on the primary jurisdiction doctrine.") (citing *Frydman v. Portfolio Recovery Assocs.*, 2011 WL 2560221, at *5 (N.D. Ill. June 28, 2011); *Tovar v. Midland Credit Mgmt.*, 2011 WL 1431988, at *4 (S.D. Cal. Apr. 13, 2011); and *Robinson v. Midland Funding, LLC*, 2011 WL 1434919 (S.D. Cal. Apr. 13, 2011)). Consequently, the primary jurisdiction doctrine does not apply here.

## II. THERE IS NO RISK OF A RULING INCONSISTENT WITH THE FCC BECAUSE THE MEANING OF "CAPACITY" IS NOT BEFORE THIS COURT.

Despite the FCC's multiple clear rulings, MD247 suggests that the FCC may revisit the issue of whether a predictive dialer is an ATDS. But the fact that the FCC could potentially place limits on its otherwise clear rule that has been repeatedly applied by federal courts does not present one of the "limited circumstances" in which application of the primary jurisdiction doctrine is appropriate. *See, e.g., Swope v. Credit Mgmt., LP*, 2013 WL 607830, at *4 (E.D. Mo. Feb. 19, 2013) ("The interests of consistency and uniformity are better served by allowing this case to proceed on the prior interpretations of the FCC that have been consistently applied by the courts, rather than postponing this case for an indefinite amount of time because [of] the possibility that the FCC may decide to reconsider its past position."); *Frydman*, 2011 WL 2560221, at *5 ("The possibility that the FCC will . . . change or modify its previously stated positions . . . is not enough reason for this Court to stay its hand while that process plays out

---

(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. ***This includes 'predictive dialers'***. . . .") (emphasis added).

-6-
PLAINTIFF'S RESPONSE IN OPP.                                                      CASE NO. 13-CV-01553-JCS
TO DEF. MD247'S MOT. TO STAY

before the FCC.").[3]

More importantly, the specific question that MD247 suggests the FCC *might* address is not even currently—and may never be—before this Court, meaning there is no threat to the uniform administration of the TCPA from inconsistent judicial and FCC rulings. As explained above, the TCPA defines an ATDS as equipment that has "the capacity" to store or produce and dial telephone numbers, 47 U.S.C. § 227(a)(1), and that the FCC has repeatedly ruled that a predictive dialer falls within such definition. MD247 suggests that the FCC could consider whether "capacity" in the statutory definition of ATDS includes only the *present* capacity to store or produce and dial numbers, or whether it includes both present *and potential* capacity, and if the former, then MD247 should be absolved of liability. (Mot. at 6.) But even assuming that the FCC were to address this present/potential capacity question, which is anything but certain, that fact would not justify application of the primary jurisdiction doctrine here because the details regarding the nature of the predictive dialer used by MD247 are not yet known and not before the Court.

Here, MD247 acknowledges that it used a predictive dialer (Mot. at 8), but because no discovery has yet taken place, there is nothing establishing that the predictive dialer used by MD247 lacked the "present capacity" to store or produce and dial numbers. Indeed, the Meehan Declaration states only that MD247 did not "*utilize* any capacity that its predictive dialer may have had" to store or produce and dial numbers. (Meehan Decl. ¶ 9) (emphasis added). But that conflates the analysis—it's not *how* the defendant made a particular call, but whether the system it used had the "capacity" to make automated calls. *See Satterfield v. Simon & Schuster, Inc.*,

---

[3] In addition, any change to the FCC's long-standing rule such that certain predictive dialers would no longer be considered an ATDS would likely not be retroactive. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (holding that agency rules are generally not to be applied retroactively). The predictive dialer used by MD247 was considered an ATDS at the time the calls were made, and MD247 is liable for its past conduct regardless of whether the FCC rules at some future date that the predictive dialer it used is exempt from the TCPA going forward. *See Frydman*, 2011 WL 2560221 at *7 (refusing to apply primary jurisdiction doctrine, in part because "[w]hatever the FCC decides . . . will not affect plaintiffs' claims because any ruling likely will be prospective only").

1  569 F.3d 946, 952 (9th Cir. 2009) ("a system need not actually store, produce, or call randomly
2  or sequentially generated numbers, it need only have the capacity to do it."); *Lozano v. Twentieth*
3  *Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1010 (N.D. Ill. 2010) ("in order to qualify as an
4  automatic telephone dialing system, the equipment need only have the *capacity* to store or
5  produce numbers") (emphasis in original); *Abbas v. Selling Source, LLC*, 2009 WL 4884471, at
6  *4 (N.D. Ill. Dec. 14, 2009) ("The plain text of the statute requires only 'the capacity' for such
7  random or sequential generation and the implementing regulations impose no higher burden").
8  Notably, the Declaration doesn't state that the predictive dialer lacked the present capacity to
9  store or produce and dial numbers, and in fact, it suggests otherwise—that MD247's equipment
10 "may have had" such capacity. (*Id.*) Thus, it is entirely possible that the predictive dialer used
11 by MD247 *did* have the present capacity to auto-dial, in which case the FCC's ultimate position
12 (if any) on the present/potential capacity question would be irrelevant.

13 As the Ninth Circuit has stated, "[i]n the context of the primary jurisdiction doctrine, the .
14 . . question is whether any set of facts could be proved which would avoid application of the
15 doctrine." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1088 (9th Cir. 2006). Here,
16 there exists such a set of facts—that the predictive dialer MD247 admittedly used *did* have the
17 present capacity to store or produce and dial numbers. If that set of facts comes out in discovery,
18 then primary jurisdiction wouldn't even be an issue because the Court wouldn't have to resolve
19 whether a predictive dialer lacking such present capacity is an ATDS—the question MD247
20 claims should be decided by the FCC. Consequently, staying the litigation at this point, before
21 any discovery on the issue has been taken or completed,[4] would serve absolutely no purpose.
22 *See County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1252 (9th Cir. 2009) (refusing to
23 apply primary jurisdiction doctrine where, pre-discovery, it was unclear whether agency

---

[4] To the extent the Court decides that further factual development into the issue of the present/potential capacity of MD247's predictive dialers, Plaintiff requests leave to conduct limited discovery into such issues.

-8-
PLAINTIFF'S RESPONSE IN OPP.  CASE NO. 13-CV-01553-JCS
TO DEF. MD247'S MOT. TO STAY

expertise would be required to resolve claim), *rev'd on other grounds sub nom. Astra USA, Inc. v. Santa Clara County*, 131 S. Ct. 1342 (2011); *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1173 (9th Cir. 2002) ("It is not clear from the record so far compiled whether [this case] presents the sort of complex and far-reaching issues that are properly within the FCC's primary jurisdiction.").

Instructive on this point is *Pimental v. Google, Inc.*, 2012 WL 1458179 (N.D. Cal. Apr. 26, 2012). In that case, the defendants argued that a TCPA case against them should be stayed in light of the GroupMe petition—the same petition that MD247 relies most heavily on (*see* Mot. at 7)—which asked the FCC to address, among other things, the present/potential capacity question. Judge Rogers refused to stay the case at that time because "even if the GroupMe petition raises issues pertinent to this litigation, the issues are not presently before the Court and likely will not be before the Court for at least six months." 2012 WL 1458179 at *4. Judge Rogers went on to state:

> If GroupMe's petition . . . is acted upon, then the parties can bring it to the Court's attention. The Court leaves open the possibility that after further discovery and development of the factual record, deferral to the FCC may be appropriate. At this point, however, it is not necessary or appropriate to stay the action under the doctrine of primary jurisdiction.

*Id*. at *5; *see also County of Santa Clara*, 588 F.3d at 1252 ("[W]e decline to invoke primary jurisdiction at this time, but leave open the possibility that the district court may decide after further factual development that referral to [the relevant agency] is appropriate.")

That is precisely the approach the Court should take here. The present/potential capacity question is not currently—and may never be—before the Court. Thus, staying the litigation before the facts relevant to the question are established is not appropriate.[5]

---

[5] This is an important distinction between this case and *Glauser v. Twilio, Inc.*, No. C 11-2584 PJH, 2012 WL 259426 (N.D. Cal. Jan. 27, 2012). In *Glauser*, the issues before the FCC were squarely before this Court because there were motions to dismiss pending that would have required this Court to address those issues. *Id*. at *3 ("As these issues [before the FCC] directly overlap with the legal issues before the court by way of plaintiff's complaint and defendants' motions to dismiss, the court concludes that the FCC is in the process of utilizing its recognized expertise to consider issues pending before the court. As such, the prerequisites for application of

### III. EVEN IF THE MEANING OF "CAPACITY" WAS BEFORE THIS COURT, THAT ISSUE IS PURELY A QUESTION OF STATUTORY INTERPRETATION APPROPRIATE FOR JUDICIAL RESOLUTION.

Even if the present/potential capacity question *was* currently before this Court (it isn't), it's a straightforward question of statutory interpretation appropriate for judicial resolution and doesn't require any particular expertise of the FCC. As noted above, in determining whether the primary jurisdiction doctrine applies, courts in this circuit consider whether the question at issue is one calling for agency expertise, or whether it instead falls within the conventional experience of judges. Statutory interpretation is a task that falls well within the conventional experience of judges. Indeed, as the Second Circuit has noted, "statutory interpretation . . . is the daily fare of federal judges." *See Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 295 (2d Cir. 2006) (refusing to apply primary jurisdiction doctrine).

For this reason, numerous federal courts have refused to apply the primary jurisdiction doctrine where the relevant question was one of statutory interpretation. *See, e.g., CSX Transp. Co. v. Novolog Bucks Cnty.*, 502 F.3d 247, 253 (3d Cir. 2007); *Ohio Valley Envt'l. Coal., Inc. v. Coal-Mac, Inc.*, 775 F. Supp. 2d 900, 919 (S.D.W. Va. 2011); *Frydman*, 2011 WL 2560221, at *7; *Cent. Valley Chrysler-Jeep, Inc. v. Witherspoon*, 2005 WL 2709508, at *12 (E.D. Cal. Oct. 20, 2005); *Soc'y of New York Hosp. v. Associated Hosp. Serv. of New York*, 367 F. Supp. 149, 154 (S.D.N.Y. 1973); *Interstate Commerce Comm'n v. Shippers Co-op., Inc.*, 196 F. Supp. 8, 10 (S.D. Cal. 1961) *aff'd sub nom. Shippers Co-op., Inc. v. I.C.C.*, 308 F.2d 888 (9th Cir. 1962). Indeed, "there is no principle of administrative law requiring a court to await an agency's interpretation of the law before the court interprets the law." *Cent. Valley Chrysler-Jeep, Inc.*, 2005 WL 2709508, at *12.

Here, the present/potential capacity question is purely a question of statutory interpretation because it revolves entirely around the meaning of the word "capacity" in the

---

the primary jurisdiction doctrine are satisfied. . . ."). Here, there are no such motions to dismiss pending and thus no need for this Court currently to make any rulings on issues that may come before the FCC.

-10-

PLAINTIFF'S RESPONSE IN OPP. TO DEF. MD247'S MOT. TO STAY

CASE NO. 13-CV-01553-JCS

TCPA. Even the pending petitions that MD247 relies on simply apply traditional tools of statutory interpretation to the present/potential capacity question rather than calling on any particular technical expertise of the FCC. *See, e.g.*, Communication Innovators Petition at 5-6 (analyzing the "plain language" of the TCPA); PACE Petition at 12-14 (same); Communication Innovators Petition at 6-9 (examining legislative history); GroupMe Petition at 12-14 (same); PACE Petition at 14-18 (same); GroupMe Petition at 10-12 (utilizing absurdity doctrine interpretive cannon); PACE Petition at 13-14 (same); YouMail Petition at 11 (same).[6]

Indeed, Judge Rogers in *Pimental* refused to apply the primary jurisdiction doctrine to this exact question for just that reason. *See* 2013 WL 1458179, at *3-4 ("A district court is suited to resolve issues of statutory interpretation of . . . the term 'capacity' . . . Although Defendants argue that the term 'capacity' within the definition of ATDS . . . [is] not defined in the TCPA, Congress has not placed this task . . . particularly within the agency's discretion."). In addition, at least one other federal court has ruled on the present/potential capacity question without any indication at all that doing so was outside conventional judicial experience or otherwise something on which FCC expertise was necessary or even helpful. *Hunt v. 21st Mortg. Corp.*, 2013 WL 5230061, at *3-4 (N.D. Ala. Sept. 17, 2013). In short, if and when the present/potential capacity question is actually at issue, the Court is (obviously) perfectly capable of addressing this statutory interpretation question.[7]

---

[6] The GroupMe Petition is attached to MD247's Motion as Exhibit A. The other petitions are available at: http://apps.fcc.gov/ecfs/document/view?id=7022036230 (Communications Innovators); http://apps.fcc.gov/ecfs/document/view?id=7021985815 (PACE); http://apps.fcc.gov/ecfs/document/view?id=7022288462 (YouMail); http://apps.fcc.gov/ecfs/document/view?id=7021985668 (Satcom Marketing); http://apps.fcc.gov/ecfs/document/view?id=7021755205 (Revolution Messaging). Neither the Satcom Marketing Petition nor the Revolution Messaging Petition cited by MD247 even address the present/potential capacity question.

[7] Further, to the extent the Court believes that—if and when the statutory interpretation question arises—FCC guidance would be helpful, it is always free to solicit amicus briefs. *See, e.g., Luckey v. Baxter Healthcare Corp.*, No. 95 C 509, 1996 WL 242977, * (N.D. Ill. May 9, 1996) ("To the extent that the FDA wants to offer its views, we will continue to accept amicus briefs from [it]."); *DeBraska v. City of Milwaukee*, 131 F. Supp. 2d 1032, 1033 (E.D. Wisc. 2000) ("At this court's invitation, the Secretary of Labor has filed an amicus brief. . . .").

## IV. THE FCC HAS GIVEN NO INDICATION THAT IT INTENDS TO RULE ON THE GROUPME PETITION.

Finally, while MD247 points to the GroupMe petition as the primary basis for a stay, as the Court is well aware, there is no indication the FCC intends to rule on the GroupMe petition at all, let alone within a reasonable period of time, nor is there any requirement that it do so. Instead, so long as its decision to decline ruling is neither "arbitrary" nor "capricious," the FCC has broad discretion to decline to rule, even where it initially accepts a petition. *See Yakima Valley Cablevision, Inc. v. F.C.C.*, 794 F.2d 737, 747 (D.C. Cir. 1986); *see also* 5 U.S.C. § 554(e) (2012) (vesting administrative agencies with "sound discretion" with respect to declaratory rulings); *In the Matter of Junk Fax Prevention Act of 2005*, 27 F.C.C.R. 4912, 4912 (May 2, 2012) (exercising discretion and dismissing TCPA petition without ruling on it).

This is especially true given that within weeks after it was filed, the FCC issued a ruling addressing certain issues pertaining to "prior express consent" that were raised by the GroupMe petition. *See* In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, FCC 12-21, CG Dkt. 02-278, reprinted in 27 F.C.C.R. 1830, 1831 (2012). The FCC didn't address the auto-dialer "capacity" issue as part of that ruling, but that doesn't mean that it's still ripe for determination. Rather, it very well could be that the FCC just isn't going to take up the issue. *See Owner-Operated Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*, 192 F.3d 778, 785-86 (8th Cir. 1999) (directing district court to proceed in its discretion where federal agency had declined to exercise jurisdiction over a particular issue); *see also Atchison, Topeka. & Santa Fe. Ry. Co. v. Aircoach Transp. Ass'n.*, 253 F.2d 877, 886 (D.C. Cir. 1958) (noting that district court could "proceed according to its own light" if, for instance, the Interstate Commerce Commission declined to answer particular questions). The Court is very familiar with the GroupMe petition because, as MD247 points out, it is presiding over the putative class action lawsuit against GroupMe that has been stayed based on primary jurisdiction. But the Court recognized in the GroupMe case that a decision from the FCC could take substantial time and is anything but a

-12-

PLAINTIFF'S RESPONSE IN OPP. TO DEF. MD247'S MOT. TO STAY

CASE NO. 13-CV-01553-JCS

certainty. Given what has (and hasn't transpired) since GroupMe filed its petition, the Court should deny MD247's requested stay and allow this case to proceed.[8]

## CONCLUSION

Because (1) there is no complicated issue of first impression here as the FCC has already clearly ruled multiple times that a predictive dialer is an ATDS, (2) even if the FCC were to revisit such rulings by examining the meaning of the term "capacity," there is no threat of inconsistent judicial and FCC rulings as that question is not before this Court, and (3) even if that question *was* before this Court, it is a straightforward question of statutory interpretation appropriate for judicial resolution, MD247's motion to stay on the basis of the primary jurisdiction doctrine should be denied.

Respectfully submitted,

**Plaintiff Suzan Mendoza,** individually and on behalf of all others similarly situated,

Dated: December 11, 2013      By: /s/ Ari J. Scharg
                              One of Plaintiff's attorneys

Rafey S. Balabanian (*Pro Hac Vice*)
Ari J. Scharg (*Pro Hac Vice*)
Christopher Dore (*Pro Hac Vice*)
EDELSON LLC
350 N. LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
rbalabanian@edelson.com
ascharg@edelson.com
cdore@edelson.com

---

[8] Notably, district courts have more recently declined to stay proceedings based on the pendency of petitions before the FCC related to GroupMe's request for an expedited ruling. *See, e.g., Pimental v. Google, Inc.*, 2012 WL 1458179, at *5 ("the Court is reluctant to stay this proceeding pending a determination by the FCC since there is no indication that the FCC has taken up or will take up the issues."); *Sterk v. Path, Inc.,* 2013 WL 5460813, at *2 (N.D. Ill. Sept. 26, 2013) ("judicial economy would not be served if this case is allowed to stagnate on the court docket, waiting indefinitely for a decision by the FCC which may or may not be relevant"). This Court should similarly deny the requested stay based on the GroupMe Petition.

Sean P. Reis (State Bar No. 184044)
THE REIS LAW FIRM, A.P.C.
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: (949) 713-9440

Stefan Coleman
LAW OFFICES OF STEFAN COLEMAN, LLC
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Tel: (877) 333-9427
law@stefancoleman.com

***Attorneys for Plaintiff and the Putative Class***

**CERTIFICATE OF SERVICE**

-14-

PLAINTIFF'S RESPONSE IN OPP.
TO DEF. MD247'S MOT. TO STAY

CASE NO. 13-CV-01553-JCS

I, Ari J. Scharg, an attorney, hereby certify that on December 11, 2013, I served the above and foregoing **Response in Opposition to Defendant MD247, Inc.'s Motion to Stay,** by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system, on this 11th day of December 2013.

/s/ Ari J. Scharg